UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JARED J. CAMERON,

        Plaintiff,

v.

UNKNOWN GURNOE et al.,

        Defendants.

_____/

Case No. 2:19-cv-71

Honorable Gordon J. Quist

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Gurnoe, Switzer, Olsen, Lombard, McLean, and Rink. The Court will allow the action to proceed against Defendant Newcomb.

**Discussion**

    I.       Factual Allegations

Plaintiff Jared J. Cameron is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. Plaintiff sues the following MDOC employees at URF: Sergeant Unknown Gurnoe; Correctional Officers Bruce Switzer, Sheri Newcomb, Unknown Olsen, and Unknown Lombard; Chaplain Unknown Rink; and Grievance Coordinator M. McLean.

Plaintiff alleges that in January 2016, when the URF warden was making rounds in Plaintiff's unit, Plaintiff asked the warden why officers were making "degrading" religious comments about members of the Islamic faith. (Compl., ECF No. 1, PageID.2.) Warden Woods told Plaintiff to file a grievance about the issue. Woods also stopped by the officers' desk and spoke briefly with them.

Two days later, when Plaintiff was in the dining hall, Sergeant Gurnoe told him to leave. Plaintiff explained that the "chow lines" were still running and that his unit had been called for "Unit Store and Chow." (*Id.*) However, Gurnoe told Plaintiff that he had arrived too late to eat.

Plaintiff turned and left the dining hall. After walking out the door, he came across Officer Switzer, who, along with Sergeant Gurnoe, approached Plaintiff "with aggression." (*Id.*) Gurnoe asked, "Do you have something smart you want to say to me? Or are you waiting for us to do something [s]o you can report it to the Warden's Office[?]" (*Id.*) Plaintiff did not respond. Instead, he went back to his unit and wrote a grievance.

Several months later, on July 4, 2016, Plaintiff was working in the kitchen serving "kool-aid" when Officer Newcomb told him that he was being "laid in pending termination,

2

because [Plaintiff] refused to pass out napkins." (*Id.*, PageID.3.) Newcomb also told him, "Your Grievance that you wrote on C/O Switzer and Sgt 'G' was a mischar[ac]terization of the facts." (*Id.*) Plaintiff responded that the incident involving Switzer was an "isolated" one arising from the fact that Switzer was upset because Plaintiff had complained about prison staff's "religious comm[en]ts." (*Id.*) Newcomb stated, "We are a family, each one protects the next, this is how it is do[n]e up North[.] Maybe next time you think about that before you file any more grievances." (*Id.*) Newcomb told Plaintiff to return to his unit. Plaintiff did so. He also wrote a grievance about Newcomb's conduct.

On July 7, Plaintiff received a prisoner program and work assignment evaluation signed by Newcomb and a Trinity Food Services employee. The evaluation stated that Plaintiff refused to follow a Trinity employee's order to pass out napkins. Apparently, the evaluation did not describe any other negative work performance, and Plaintiff was not given a probationary period or issued a misconduct, so the classification director returned him to work.

That same day, Switzer issued Plaintiff a misconduct ticket for disobeying a direct order. According to the misconduct ticket, Plaintiff was washing his arms, face, hands, and feet in front of the porter's sink to prepare for group prayer in recognition of Eid al-Fitr, and Switzer told him to stop three times. According to Plaintiff, this washing, known as "WUDU," was a necessary part of his preparation for the prayer time, according to his religious beliefs. (*Id.*, PageID.3-4.) Plaintiff told Switzer that once he starts WUDU, he should finish it. Switzer responded, "My commands supersede those of your God, I'm in charge of Safety, Good Order, and Security for this Institution!" (*Id.*, PageID.4.)

Plaintiff contends that the misconduct ticket was dismissed because the misconduct could not have occurred on the date alleged; Eid al-Fitr "was performed on a different date." (*Id.*)

3

Plaintiff apparently informed his family of Switzer's actions, and they filed a "Civil Services Complaint" against Switzer. (*Id.*)

On August 16, 2016, Officer Switzer saw Plaintiff and asked him to provide his prisoner identification card. Switzer then accused Plaintiff of writing grievances on Switzer that called Switzer a liar, and noted that Plaintiff's family had filed a complaint about Switzer. Switzer declared, "You think that it will keep my from doing my job you['re] wrong. . . . [W]hy don't you go and cry that to your family, and if you don't stop, you will not be happy with the results." (*Id.*) Plaintiff filed a grievance against Switzer regarding this incident.

Later that day, Officer Olsen told Plaintiff, "Leave the cube area this won't take long, I've only got to search one area[.]" (*Id.*) Plaintiff believes that Switzer sent Olsen to the cube area to harass Plaintiff.

Eventually, Plaintiff was transferred to the other side of URF and then to another prison. On October 25, 2018, Plaintiff transferred back to URF. On November 13, 2018, Plaintiff wrote a grievance against Officer Lombard for making "religious comm[ents] against this Prisoner." (*Id.*, PageID.5.) Apparently, Lombard told Plaintiff that he agrees with Switzer that Plaintiff is a "radical." (*Id.*)

Plaintiff complained to his supervisor in food services about the comments by Lombard. Sometime after doing so, Lombard accused Plaintiff of "double dipping," which means eating twice during one meal, and he had Plaintiff "laid in" pending termination. (*Id.*) After an investigation, Plaintiff was cleared of the allegations and he returned to work. He also received back pay for the days that he missed.

Plaintiff attempted to file a grievance against Lombard for this accusation, but Grievance Coordinator McLean allegedly refused to process the grievance. Plaintiff contends that

4

McLean conspired with Newcomb and Lombard to prevent Plaintiff from exhausting the grievance procedure.  Plaintiff subsequently filed a grievance against McLean, but that grievance was not processed either.

On December 22, 2018, another Muslim prisoner was "laid in" for praying at work, and Plaintiff was asked to replace that prisoner as the lead cook.  (*Id.*)  When Plaintiff showed up for work, Newcomb allegedly stated, "You better not get caught praying over here anymore."  (*Id.*)  Plaintiff told Newcomb that his religion requires him to pray five times per day.  Newcomb responded,

> I think C/O Switzer and C/O Lombard were right.  You're a radical. . . .  Nothing you can do or nobody will ever change my rules . . . .  No grievance no complaint no lawsuit . . . I'm right you're wrong and that's that. . . .  There's nowhere in America you're allowed to pray at work mister, and that's probably only allowed secretly in heavily Arab populated areas like downstate, but not in the 'U.P.'  If you want to pray at work you should move to another country.

(*Id.*, PageID.6.)  Later, Newcomb gave Plaintiff a post-it note with "information alleging to be [a] Policy Directive provided by Chaplain Rink[.]"[1]  (*Id.*)

Plaintiff alleges that he has been assigned to work in the kitchen since July 2018, and he is not allowed to leave work to return to his unit to offer prayer.  Consequently, he has missed prayer times that are mandatory for his faith.

Plaintiff claims that Defendants Gurnoe, Switzer, Olsen, and Newcomb retaliated against him for verbally complaining and filing grievances.  Plaintiff also claims that Defendant McLean conspired with Defendants Newcomb and Lombard to retaliate against Plaintiff by preventing Plaintiff from using the grievance process.  In addition, Plaintiff claims that Defendants

---

[1] Plaintiff is apparently referring to MDOC Policy Directive 05.03.150 ¶ BB, which states that "[p]risoners shall not be released from work or school assignments to attend group religious services or activities, consistent with restrictions on attending other personal interest activities."

5

Rink, Newcomb, and Switzer prevented Plaintiff from exercising his religion by verbally harassing him and by using prison policy to force him to choose between a work assignment and prayer.

As relief, Plaintiff seeks a total of $100,000 in compensatory damages.

II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Grievance Coordinator McLean

Plaintiff asserts that Defendant McLean refused to process some of Plaintiff's grievances in retaliation for Plaintiff's complaints against other officers.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is protected conduct, *see Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000), as is a verbal complaint, *see Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016).

Plaintiff does not state a retaliation claim against McLean, however, because McLean merely refused to process a grievance. Many courts, including this one, have held that

7

the denial or refusal to process a grievance is not an adverse action. *See, e.g.*, *Ross v. Westchester Cty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (the refusal to file a single grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), aff'd, 358 F. App'x 302 (3d Cir. 2009) (the rejection or denial of prison grievances does constitute an adverse action for purposes of a retaliation claim).

The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. "The relevant question is whether the defendants' actions are '*capable* of deterring a person of ordinary firmness [from engaging in the protected conduct]'; there is no requirement that the plaintiff show actual deterrence." *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original) (quoting *Thaddeus-X*, 175 F.3d at 398).

Refusing to process a grievance could not deter a person of ordinary firmness from engaging in protected conduct because it does not have any adverse consequences. Prisoners do not have a right to an effective grievance procedure, and they suffer no consequences for filing a grievance that is not processed.

It is true that a prisoner must exhaust available administrative remedies before bringing a civil rights claim in court, *see* 42 U.S.C. § 1997e(a), but even assuming that McLean improperly prevented Plaintiff from pursuing a particular grievance, McLean could not have prevented Plaintiff from pursuing a civil rights claim based on an issue raised in that grievance. If

McLean thwarted Plaintiff's ability to use the grievances process, then the process was not "available" to Plaintiff for that claim, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio*, 20 F. App'x 469, 470 (6th Cir. 2001).

In short, Plaintiff fails to state a retaliation claim against Defendant McLean because McLean did not take an action against Plaintiff that would deter a person from engaging in protected conduct.

### B. Officer Olsen

Defendant Olsen allegedly told Plaintiff to leave his prison cube temporarily so that Olsen could conduct a search of the area. Plaintiff claims that Olsen was harassing Plaintiff in retaliation for Plaintiff's grievances and complaints. Plaintiff believes that Switzer is the one who sent Olsen.

Plaintiff does not state a retaliation claim against Olsen because Olsen's conduct was not sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct. Some actions are too minor to constitute adverse action. *Thaddeus-X*, 175 F.3d at 398. To recognize "inconsequential" actions and minor harassment as adverse action would "'trivialize the First Amendment.'" *Id.* at 398-99 (citing *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). Ordering Plaintiff to temporarily move to another area of the prison so that Olsen could conduct a search was too trivial to qualify as an adverse action.

Plaintiff does not allege that Olsen actually searched the cube area, but even if such a search occurred, it would not be an adverse action. "[P]risoners are expected to endure more than the average citizen[.]" *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). "[R]outine

9

inconveniences of prison life . . . do not constitute adverse action." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011). Cell searches are such an inconvenience. "Thus, 'the single search of a prison cubicle would not deter a person of "ordinary firmness" from pursuing constitutional grievances.'" *Id.* (quoting *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003)).

Without an adverse action, Plaintiff does not state a retaliation claim against Olsen. Consequently, Plaintiff does not state a claim against Defendant Olsen.

### C. Officer Lombard

#### 1. First Amendment

Plaintiff alleges that Defendant Lombard called him a "radical," ostensibly in reference to Plaintiff's religious beliefs and practices. Plaintiff asserts that this remark violated his religious beliefs and his rights under the First Amendment.

To the contrary, the First Amendment does not shield Plaintiff from insults or statements that are offensive. Courts routinely have rejected claims of constitutional violations based solely on verbal harassment. *See, e.g.*, *Shuaib v. Siddum*, No. 88-86126, 1988 WL 86126, at *1 (6th Cir. 1988) (holding that prison officials' refusal to address prisoners by their newly adopted legal names does not violated the religion clauses of the First Amendment) (citing *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (holding that verbal harassment is insufficient to support an Eighth Amendment claim); *Hailes v. Collier*, No. 2:12-cv-687, 2014 WL 2515581, at *5 (S.D. Ohio June 3, 2014) (holding that verbal harassment is insufficient to state a claim under § 1983 for violation of any constitutional amendment, including the First Amendment religion clauses) (citing *Siggers v. Renner*, 37 F. App'x 138, 141 (6th Cir. 2002), and *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012)); *Mizori v. Miller*, No. 5:09-cv-10824, 2009 WL 777640, at *2 (E.D. Mich. Mar. 20, 2009) (holding that verbal harassment was insufficient to support a claim of religious discrimination under the First Amendment). Especially in light of the

harmless nature of the harassment alleged, Plaintiff fails to state a claim for violation of his religious rights under the First Amendment.

2. Retaliation

Plaintiff also contends that Defendant Lombard accused Plaintiff of "double dipping," which led to Plaintiff's temporary suspension from his work assignment. Plaintiff asserts that Lombard made this accusation in retaliation for a grievance that Plaintiff filed against Lombard for making "derogatory religious comments" about Plaintiff, and/or in retaliation for Plaintiff's complaint to the food service supervisor about the fact that Lombard called Plaintiff a "radical."

Plaintiff's allegations do not satisfy the third element of a retaliation claim. They do not permit a plausible inference that Lombard's accusation was motivated by Plaintiff's protected conduct. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff's allegations of retaliatory motive are wholly conclusory and speculative. He does not allege even a temporal proximity between Lombard's actions and Plaintiff's protected

11

conduct. Plaintiff simply states that Lombard's conduct occurred sometime after Plaintiff complained to his supervisor. That is not enough to allege a retaliatory motive.

### 3. Conspiracy

Plaintiff also claims that Defendant Lombard conspired with Defendants McLean and Newcomb to prevent Plaintiff from using the prison grievance process and to retaliate against Plaintiff by having Plaintiff terminated from his work assignment.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are also conclusory and speculative. He has provided no allegations establishing any agreement between the conspirators to violate his rights. Moreover, because Plaintiff fails to state a claim against Defendant McLean regarding McLean's refusal to process Plaintiff's grievances, and fails to state a claim against Defendant Lombard regarding Lombard's "double dipping" accusation, Plaintiff's conspiracy claim based on these incidents necessarily fails as well.

Accordingly, Plaintiff fails to state a claim against Defendant Lombard.

### D. Officer Switzer

1. First Amendment

Defendant Switzer allegedly issued Plaintiff a misconduct ticket for disobeying a direct order. Apparently, Switzer ordered Plaintiff to stop washing himself at the porter sink but Plaintiff ignored him. Plaintiff claims that Switzer violated his religious rights under the First Amendment because Plaintiff was engaged in WUDU, a purification ritual necessary for him to participate in prayer, and he did not think it appropriate to stop this ritual after he had already started.

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Prison officials may impinge on these constitutional rights where their actions are "reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

13

      1.      does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

      2.      are there alternative means of exercising the right that remain open to prison inmates;

      3.      the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

      4.      whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted).

Plaintiff fails to state a claim because his right to freely exercise his religion does not give him license to ignore orders from prison staff. The order and security of a prison facility would be severely hampered if prisoners could simply ignore any directive that interrupted their religious practices. The proper response in such a situation is to obey the order, and then request an accommodation. The misconduct ticket was clearly related to the state's compelling interest in ensuring that prisoners obey direct orders. Thus, it was not improper for Switzer to issue the misconduct ticket.

In addition, Switzer's order and misconduct ticket did not significantly infringe on Plaintiff's right to practice his religion. The First Amendment does not guarantee that prisoners will always be able to practice their religious beliefs free from any interruption or interference by prison officials. An interruption on one occasion is too trivial a matter to give rise to a constitutional claim.

### 2. Retaliation

Defendant Switzer also allegedly referenced Plaintiff's grievances and told Plaintiff, "If you don't stop you won't be happy with the results." (Compl., PageID.4.)

A specific threat of harm may satisfy the adverse-action requirement for a retaliation claim if the threat would deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g.*, *Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

In this case, Switzer merely indicated that Plaintiff "would not be happy with the results" if he continued to file grievances. This statement was too vague and nonspecific to have any significant deterrent effect. It does not qualify as an adverse action.

Accordingly, Plaintiff does not state a claim against Defendant Switzer.

### E. Sergeant Gurnoe

Plaintiff alleges that Sergeant Gurnoe told Plaintiff to leave the chow hall because he was too late to eat. Plaintiff alleges that he attempted to "reason with" Gurnoe by telling him that the "[c]how lines were still running" and that his "unit was called, both for Unit Store and Chow." (Compl., PageID.2.) Gurnoe apparently told Plaintiff that Gurnoe's decision was "supported by policy," but Plaintiff believes that Gurnoe told him to leave in retaliation for

15

Plaintiff's complaints to the warden about officers making "religious comments" toward Muslim prisoners. (*Id.*)

This claim fails because it does not allege an adverse action. Tellingly, Plaintiff does not allege that he was on time for the meal. Indeed, rather than object to Gurnoe's assertion that Plaintiff was too late, it sounds as though Plaintiff attempted to offer reasons for Gurnoe to allow him to stay. In other words, there is not enough factual content from which to reasonably infer that Gurnoe was doing anything other than enforcing a prison rule. Refusing to give Plaintiff an exemption from that rule is not an adverse action.

Gurnoe also confronted Plaintiff "with aggression" and asked him if he had "something smart" he wanted to say to Gurnoe, and if Plaintiff was "waiting for us to do something [s]o you can report it to the Warden's Office[?]" (*Id.*) These statements and actions were not sufficiently adverse to give rise to a retaliation claim. They did not harm Plaintiff in any way or threaten him with any harm. Accordingly, Plaintiff fails to state a claim against Defendant Gurnoe.

### F. Chaplain Rink

Plaintiff's only factual allegation that involves Defendant Rink is that Defendant Newcomb gave Plaintiff a post-it note with "information alleging to be [a] Policy Directive provided by Chaplain Rink[.]" (Compl., ECF No. 1 at PageID.6.) This is not enough to bring a First Amendment claim against Defendant Rink. The Sixth Circuit is clear that "liability under § 1983 must be based on active unconstitutional behavior." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Merely writing down information about a policy directive is not active unconstitutional behavior. Therefore, Plaintiff fails to state a claim against Defendant Rink.

### G. Officer Newcomb

Construing the complaint generously, the Court concludes that Plaintiff states a claim under § 1983 against Defendant Newcomb. Plaintiff states a retaliation claim against

16

Newcomb for allegedly attempting to terminate Plaintiff from his job because he filed grievances against other officials. Plaintiff also states a First Amendment claim against Defendant Newcomb for enforcing a policy that prevents prisoners like Plaintiff from praying or participating in prayer services that take place during their work assignment.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Gurnoe, Switzer, Olsen, Lombard, McLean, and Rink will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's claims against Defendant Newcomb for retaliation and for denial of his religious rights under the First Amendment remain in the case.

An order consistent with this opinion will be entered.


Dated: May 29, 2019                                        /s/ Gordon J. Quist
                                                           GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE